UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TRACEY H.,[1]

Plaintiff,

v.                                                                    20-CV-636 (JLS)

COMMISSIONER OF SOCIAL
SECURITY,

Defendant.

_____

### DECISION AND ORDER

Plaintiff Tracey H. commenced this action under the Social Security Act and seeks review of the Commissioner of Social Security's determination that she was not disabled.  Dkt. 1.  Plaintiff moved for judgment on the pleadings.  Dkt. 11-1. The Commissioner responded to the motion and cross-moved for judgment on the pleadings.  Dkt. 14-1.  For the reasons discussed below, the Court grants the Commissioner's motion and denies Plaintiff's motion.

### PROCEDURAL HISTORY

On April 26, 2017, Plaintiff applied for Disability Widow's Benefits, alleging disability beginning on October 31, 2012. Dkt. 6, at 15.[2]  Plaintiff's application

_____

[1] Pursuant to the Western District of New York's November 18, 2020 standing order regarding the naming of plaintiffs in Social Security decisions, this decision and order identifies Plaintiff by first name and last initial.

[2] Dkt. 6 is the transcript of proceedings before the Social Security Administration. All further references are denoted "Tr. _.

initially was denied on July 31, 2017. *Id.* She then requested a hearing before an administrative law judge ("ALJ"), which occurred on March 18, 2019. *Id.* The ALJ issued a decision on April 3, 2019, confirming that Plaintiff was not disabled pursuant to the Social Security Act. *Id.* at 27. The Appeals Council denied Plaintiff's request for review. Dkt. 11-1, at 2. Plaintiff then commenced this action seeking judicial review of the Commissioner's decision. Dkt. 1.

## LEGAL STANDARDS

### I.   District Court Review

The scope of review for a disability determination involves two levels of inquiry. *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). First, the Court must "decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* The Court's review for legal error ensures "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes" of the Social Security Act. *See Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Second, the Court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations and citation omitted). The Court does not "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotations and citation omitted). But "the deferential standard of review for

substantial evidence does not apply to the Commissioner's conclusions of law."
*Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).  Indeed, if there is "a
reasonable basis for doubt whether the ALJ applied correct legal principles,"
applying the substantial evidence standard to uphold a finding that the claimant
was not disabled "creates an unacceptable risk that a claimant will be deprived of
the right to have her disability determination made according to the correct legal
principles." *See Johnson*, 817 F.2d at 986.

## II.   Disability Determination

An ALJ evaluates disability claims through a five-step process established by
the Social Security Administration.  *See* 20 C.F.R. § 404.1520(a).  At step one, the
ALJ determines whether the claimant is currently engaged in substantial gainful
activity.  *Id.* § 404.1520(a)(4)(i).  If so, the claimant is not disabled.  *Id.*  If not, the
ALJ proceeds to step two.  *Id.* § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant suffers from any severe
impairments.  *Id.* § 404.1520(a)(4)(ii).  If there are no severe impairments, the
claimant is not disabled.  *Id.*  If the claimant does have any severe impairments, the
ALJ proceeds to step three.  *Id.* § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or
combination of impairments meets or equals an impairment listed in the
regulations.  *Id.* § 404.1520(a)(4)(iii).  If the claimant's severe impairment or
combination of impairments meets or equals an impairment listed in the

regulations and meets the duration requirement, the claimant is disabled. *Id.*
§§ 404.1520(a)(4)(iii), (d).

But if the ALJ finds that no severe impairment or combination of
impairments meets or equals an impairment in the regulations, the ALJ proceeds to
calculate the claimant's residual functional capacity ("RFC"). *Id.*
§§ 404.1520(a)(4)(iv), (e). The RFC is a holistic assessment that addresses the
claimant's medical impairments—both severe and non-severe—and evaluates the
claimant's ability to perform physical or mental work activities on a sustained basis,
notwithstanding limitations for his or her collective impairments. *See id.*
§§ 404.1520(e), 404.1545.

The ALJ then proceeds to step four and uses the claimant's RFC to determine
whether the claimant can perform past relevant work. *Id.* §§ 404.1520(a)(4)(iv), (e).
If the claimant can perform past relevant work, he is not disabled, and the analysis
ends. *Id.* §§ 404.1520(a)(4)(iv), (f). But if the claimant cannot, the ALJ proceeds to
step five. *Id.* §§ 404.1520(a), (f).

In the fifth and final step, the Commissioner must present evidence to
demonstrate that the claimant is not disabled because the claimant is physically
and mentally capable of adjusting to an alternative job. *See Berry v. Schweiker*, 675
F.2d 464, 467 (2d Cir. 1982); 20 C.F.R. §§ 404.1520(a)(4)(v), (g). Specifically, the
Commissioner must prove the claimant "retains a residual functional capacity to
perform alternative substantial gainful work which exists in the national economy."

4

*Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (internal quotations and citation omitted).

## DISCUSSION

### I.   The ALJ's Decision

The ALJ evaluated Plaintiff's claim for benefits under the above process. *See* Tr. 16–27. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. *Id.* at 17. At step two, the ALJ determined that Plaintiff had the following severe impairments: morbid obesity; conversion disorder with psychogenic non-epileptic seizures; post-traumatic stress disorder; depressive disorder not otherwise specified; degenerative disc disease of the cervical spine; degenerative joint disease of the right shoulder and the right hip; and migraines. *Id.* at 17–18. At step three, the ALJ concluded that Plaintiff's impairments did not meet or medically equal the severity of the impairments listed in the regulation. *Id.* at 18. The ALJ then determined Plaintiff's RFC:

> [T]he claimant has a residual functional capacity to perform light work because she can lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently, sit for six hours, stand for six hours, and walk for six hours as defined in 20 CFR 404.1567(b) except she can frequently reach overhead and in all directions to the right. The claimant can climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds, stoop frequently, and crawl frequently. The claimant can never work at unprotected heights, never around moving mechanical parts, and never operate a motor vehicle. She can work in vibration occasionally. She is able to perform simple, routine and repetitive tasks and is able to perform simple work-related decisions. The claimant can occasionally interact with supervisors and coworkers but can never interact with the public.

*Id.* at 20–21.

At step four, the ALJ determined that Plaintiff has no past relevant work. *Id.* at 26. As a result, the ALJ proceeded to evaluate step five, in which she concluded that—considering Plaintiff's age, education, nonexistent work experience, and RFC—a significant number of jobs exist in the national economy that Plaintiff could perform. *Id.* at 27. The ALJ therefore determined that Plaintiff was not disabled, as defined in the Social Security Act, from January 24, 2015, through the date of her decision. *Id.*

## II.   Analysis

Plaintiff argues that remand is required because: (1) the ALJ improperly weighed the medical opinion evidence because she valued a one-time consultative report over the opinion of Plaintiff's long-term psychiatrist and did not articulate the reasons for this weight assignment; and (2) the ALJ inserted her own lay opinion when calculating the RFC. Dkt. 11-1, at 11. The Court disagrees.

### A. The ALJ properly considered and assessed Dr. Santarpia's opinion when determining Plaintiff's RFC, and sufficiently conveyed her conclusion.

Plaintiff's argument centers on the opinions of Dr. Santarpia, a consultative psychological examiner, and Dr. Shim, Plaintiff's treating psychiatrist. Dkt. 11-1, at 12.

Under updated regulations that apply to claims filed after March 27, 2017, like Plaintiff's, the ALJ need not defer to a treating physician's medical opinion or give it controlling weight. *Compare* 20 C.F.R. § 404.1527 (explaining how an adjudicator considers medical opinions for claims filed before March 27, 2017), *with*

20 C.F.R. § 404.1520c (explaining how an adjudicator considers and articulates medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017).[3]

The record here contains substantial evidence that is inconsistent with Dr. Shim's opinion. Dr. Shim opined that Plaintiff either could not meet competitive standards, or had no useful ability to function, in nearly all itemized work-related mental abilities. *See* Tr. 25. But Dr. Shim's opinion is inconsistent with substantial evidence in the record, including his own previous mental status findings and Plaintiff's varied activities of daily life. *See id.* at 22–25.[4] For example, Dr. Shim's previous mental status findings demonstrate normal and stable levels of Plaintiff's condition. *See id.* at 64–65. During numerous appointments with Dr. Shim, Plaintiff reported being in a good mood, feeling stable, and "out of [her] depression."

---

[3] Even under the prior regulations, an ALJ was not bound to adopt a treating physician's opinion, and could find a consultative examiner's opinion more persuasive than a treating physician's opinion. *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (ALJs need not afford "controlling weight where the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts"); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (examining physicians' opinions are not controlling when contradicted by other substantial evidence); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (the ALJ may overlook a treating physician's opinion if contradicted by the weight of other record evidence); *see also Tricarico v. Colvin*, 681 F. App'x 98, 101–02 (2d Cir. 2017) (the ALJ may consider the plaintiff's daily activities as evidence inconsistent with medical opinions).

[4] Plaintiff suggests that the ALJ had a duty to re-contact Dr. Shim to develop the record—presumably based on the ALJ's note that Dr. Shim "does not support his limitations with citations to the record." *Id.* at 25. But the ALJ's decision makes clear that she finds Dr. Shim's opinion unpersuasive because it is inconsistent with other evidence in the record, including his own documentation from treating Plaintiff.

*See id.* at 691–92, 764–65.  Dr. Shim concluded that Plaintiff was neat, cooperative, coherent, showed appropriate affect, and had grossly intact orientation, memory, insight, and judgment.  *See id.* at 784.  Evidence from other professionals— including social worker Maria Saleh and state agency psychological consultant Dr. Abiola DiPeolu—is consistent with Dr. Shim's mental status reports and treatment notes but inconsistent with his opinion; this evidence notes that Plaintiff had been active, stable, and social and that her psychiatric impairments were non-severe. *See id.* at 23, 25, 64–65, 813.

Plaintiff's frequent and dynamic activities also contradict Dr. Shim's opinion. Her wide-ranging activities include caring for her personal needs, cooking meals, washing dishes, cleaning the house, grocery shopping, running errands, managing her money, and providing care for her dog and her elderly mother (including cleaning her mother's house, driving her to work, and carrying her grocery bags). *See* Tr. 19–22, 43–45, 50–51, 164–68, 339, 345.  In addition, Plaintiff independently walks, drives, and uses public transportation.  *See* Tr. 19–22, 24, 45, 165, 167–68. She also spends time socializing, visiting, and dining with her fiancé, sons, sisters, and mother.  *See id.* at 19, 21–24, 43, 164–65, 168, 542, 820.  She works out at the gym, takes Zumba classes, went on a cruise, and traveled to Kenya in 2015; she also enjoys sewing, bicycle riding, attending church, playing computer games, reading, and serving as a temporary foster parent for her cousin's 5-year-old son.  *See id.* at 19–24, 40–41, 44, 164–65, 168, 339, 345, 467, 508, 541, 643–44, 691, 707, 764–65, 801, 820, 875.

8

Dr. Santarpia opined that Plaintiff could:

> understand, remember, and apply simple as well as complex
> directions and instructions; use reason and judgment to make work-
> related decisions; interact adequately with supervisors, co-workers,
> and the public; sustain concentration and perform a task at a
> consistent pace; sustain an ordinary routine and regular attendance
> at work; maintain personal hygiene and appropriate attire; be aware
> of normal hazards and take appropriate precautions within normal
> limits.

*Id.* at 24–25. She further opined that Plaintiff demonstrated "[m]ild impairment . . .

in regulating emotion, controlling behavior, and maintaining well-being," and that

Plaintiff's difficulties were "caused by lack of motivation." *Id.* at 25. Unlike Dr.

Shim's opinion, Dr. Santarpia's opinion is consistent with the substantial evidence

in the record discussed above.

In light of the consistency between Dr. Santarpia's opinion and the record,

the inconsistency of Dr. Shim's opinion with the record, and the new regulations

under which the ALJ assessed the various medical opinions, the ALJ properly

recognized Dr. Shim's opinion as unpersuasive and Dr. Santarpia's as persuasive.

Plaintiff further argues that the ALJ failed to articulate the supportability

and consistency of each medical opinion with the record in her decision. But a

"slavish recitation" is not necessary "where the ALJ's reasoning and adherence to

the regulation are clear." *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013); *see*

*also Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (an ALJ

does not have to state every reason for justifying a decision).

Plaintiff focuses on a single page of the ALJ's decision (Tr. 25), without

acknowledging or considering the previous four pages of the decision containing

numerous citations to medical records, treatment notes, and hearing testimony. *See* Tr. 21–24. The ALJ's decision, as a whole, contains the necessary justification for finding each opinion persuasive or unpersuasive.

**B. The ALJ considered all the evidence in the record when determining Plaintiff's RFC and did not inappropriately insert her own lay opinion.**

Plaintiff next argues that the ALJ substituted her own lay opinion when determining the RFC by including limitations not contained in the opinions of Dr. Brauer and Dr. Miller, and that the ALJ did not explain what substantial evidence she relied upon when including these limitations.

The ALJ—not a medical source—has the duty to determine a claimant's RFC. *See* 20 C.F.R. §§ 404.1546(c), 404.1527(d), 416.946(c), 416.927(d)(2); *Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020) (the ALJ committed no error by determining the scope of the Plaintiff's RFC because that responsibility belongs to the ALJ). And the ALJ need not solely rely on medical opinions when assessing the Plaintiff's RFC, but also may consider other evidence in the record. *See Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109-10 (2d Cir. 2020) ("medical opinion [evidence] providing the specific restrictions reflected in the ALJ's RFC determination . . . is not required" when the record contains sufficient evidence, like treatment notes, for the ALJ to assess the RFC); *Corbiere v. Berryhill*, 760 F. App'x 54, 56 (2d Cir. 2019) (affirming the decision despite the lack of a medical opinion expressly discussing plaintiff's physical limitations and instead relying on treatment notes).

Based on his or her consideration of all the evidence in the record, an ALJ may reasonably infer a plaintiff's RFC. *See Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013); *see also Trepanier v. Comm'r of Soc. Sec.*, 752 F. App'x 75, 79 (2d Cir. 2018) (the ALJ properly inferred the plaintiff could perform lifting, even though the record did not contain a medical opinion directly addressing that ability); *Johnson v. Colvin*, 669 F. App'x 44, 46 (2d Cir. 2016) (the ALJ properly relied on plaintiff's testimony to reasonably infer that the plaintiff could perform light work). The ALJ need not explicitly articulate this inference or "recite every piece of evidence that contributed to the decision, so long as the record permits [the court] to glean the rationale of an ALJ's decision." *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013); *see Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (an RFC need not "perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision"); *see also Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112 (2d Cir. 2010) ("substantial evidence support[ed] . . . the ALJ's determination," even though "the ALJ might have been more specific in detailing the reasons [for the decision]").

Here, the ALJ did not substitute her own lay opinion when including light exertion, occasional climbing of ramps and stairs, frequent postural [changes], and frequent reaching with the right arm in Plaintiff's RFC. These aspects of the RFC, even if not directly addressed by a medical opinion, are reasonably related to Plaintiff's daily activities, Dr. Brauer's medical opinion, treatment records, professional physical findings, and physician notes in the record. *See* Tr. 23. This is

not a case in which the Court would be "unable to fathom the ALJ's [RFC] rationale in relation to [other] evidence." *Berry*, 675 F.2d at 469. The RFC determination is not based on an improper lay opinion but, instead, synthesizes the medical opinions and other substantial evidence in the record with the rational inferences that can be drawn from them.

Plaintiff's disagreement with the ALJ's weighing of evidence does not indicate error. *See Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (the issue is "whether substantial evidence supports the ALJ's decision," not whether substantial evidence supports the claimant's argument); *DeChirico v. Callahan*, 134 F.3d 1177, 1182-83 (2d Cir. 1998) (where substantial evidence supports claimant's account, but "substantial evidence [also exists] in the record from which the ALJ could have reasonably" ruled against the claimant, the ALJ's findings are not flawed); *see also Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) (Plaintiff's disagreement with the ALJ's weighing of the evidence prevents the reviewing court from reweighing it because the RFC calculation was adequately backed by the record).

Substantial evidence supports the ALJ's evaluation of the medical opinion evidence and other evidence in the record—and, ultimately, the ALJ's RFC determination. Thus, remand is not warranted, even if alternative evidence exists to support Plaintiff's position. *See Brault*, 683 F.3d at 448.

## CONCLUSION

For these reasons, the Court GRANTS Commissioner's motion for judgment on the pleadings (Dkt. 14) and DENIES Plaintiff's motion for judgment on the pleadings (Dkt. 11).  The Commissioner's decision is AFFIRMED.  The Clerk of the Court shall close this case.

SO ORDERED.

Dated:      June 27, 2022
            Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE